# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

Dustin Soward                                          Civil Action No. 1:23-cv-453

    Plaintiff

v.

Bank of America, N.A                                   **JURY TRIAL DEMANDED**

                                                          **COMPLAINT**

    Defendant

## COMPLAINT

NOW comes the Plaintiff, Dustin Soward (hereinafter the "Plaintiff"), by and through his Counsel of record to make his allegations known against the Bank of America, by and through his complaint that alleges the following:

## PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1693 (Electronic Funds Transfer Act)

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 15 U.S.C. § 1693 *et seq.*

3. Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

4. Plaintiff is a natural person and a "consumer" as that term is defined by 15 U.S.C.S. § 1693(a)(5) of the Electronic Fund Transfers Act

5. Defendant, Bank of America is a financial institution as defined by 15 U.S.C.S. § 1693a(9) the term "financial institution" means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer.

6. Bank of America conducts regular, continuous, systematic, and substantial business in the Western District of Texas.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

8. On Friday, April 22, 2022, Plaintiff started receiving a series of text message alerts from Bank of America (hereinafter BOA) regarding suspicious activity on his debt card.

9. Plaintiff checked his BOA account online and saw a series of large charges/purchases/withdraws to Reeder LLC (hereinafter Reeder) that he did not make, he did not agree or consent to or know anything about, from his debit card. Reeder attempted to charge and electronically withdraw approximately $7,000.00 from his debt card. Immediately after, Reeder then attempted charge and electronically withdraw $3,644.16 from his debt card. Immediately after, Reeder then attempted to charge and electronically withdraw approximately $50 from his debt card. Immediately after, Reeder then attempted to charge and electronically withdraw $100 from his debt card. Immediately after, Reeder then attempted to charge and electronically withdraw $3,644.16 from his debt card, for a second time. Plaintiff looked for his BOA debit card and realized that it was missing.

10. On April 22, 2022, Plaintiff called BOA and disputed the debit card charges/purchases and electronic transfers to Reeder. Plaintiff informed BOA that his debit card was missing and

that he did not make or consent to any purchases to Reeder. Plaintiff did not make any purchases to any company for the amounts listed above.

11. BOA informed Plaintiff that the charges would be investigated.

12. Plaintiff checked his BOA account on Monday, April 25, 2022, and saw that the charges listed above were still "Pending" and assumed that the bank had not processed or finalized any activity from the weekend.

13. On Tuesday, April 26, 2022, Plaintiff checked his account online. Plaintiff noticed that one of the $3,644.16 withdraws cleared and taken out of his account. Plaintiff also noticed that BOA reversed the other charges to Reeder. Highly concerned, Plaintiff called BOA and asked why the one $3,644.16 charge was not returned to him, especially since the other illegal charges were returned. BOA informed Plaintiff that the investigation period takes ten (10) business days and they had until May 5, 2022, to resolve this issue.

14. On Thursday, May 5, 2022, Plaintiff logged into his account online and saw that he had a "message" notice from BOA. Plaintiff opened the message, it was dated May 3, 2022, and it stated that the $3,644.16 would not be returned or recredited and they considered the "claim" closed. The message stated that he should call BOA if he wanted copies of the documents that BOA used in making their decision. The message provided a phone number and stated to have his claim number when he calls. Plaintiff immediately called and asked why $3,644.16 was not returned and what documents were used in making their decision. BOA representative told Plaintiff that he did not know why his claim was denied and the money was not returned. He told Plaintiff that they would send him a written explanation as to how they made their decision as well as the documents they used. BOA did not send Plaintiff any written explanation as to

how they made their decision and never sent him any documents they used in making their decision. Plaintiff logged back on to his account online and noticed the message was deleted.

15. Plaintiff's wife (hereinafter Angela) then called and talked to another BOA representative about their denied claim. The representative referenced the fact that Plaintiff recently deposited $7,003.22 into the account to "presumably" cover the charges and somehow an admission to the charges. The BOA representative did not make a lot of sense. Angela stated that $7,003.22 was nothing more than her husband's direct deposit from his employer, which is done on a regular basis. She further explained that they should see that it came from his employer, just as it always does and has nothing to do with the fraudulent charges. Angela also asked why the May 3, 2022, message was deleted after it was read. The representative stated that he did not know why it was denied or why the message was deleted but that they would send a written explanation as to the denial of their first claim within four (4) to six (6) business days, which never happened. The representative stated that he would reopen the dispute and advised Angela to provide a written statement as to the facts of the fraudulent clam. Angela asked how they would be notified about the reopened dispute and was told that they would be notified in BOA's online messages and alerts.

16. Plaintiff and Angela wrote out and sent a detailed and thorough dispute/statement as to the facts of their claim to BOA, they signed, dated and sent it on May 5, 2022.

17. One June 3, 2022, BOA sent Plaintiff and Angela a letter stating they were denying their claim again. The letter stated:

> Dustin, unfortunately, we're unable to approve your recent claim.
>
> As you requested, we completed a re-evaluation of your claim. Our research included the information you provided with your claim, your account history and/or the monthly account statements we sent you. We made this decision because:
> The charge was authorized by you or made by someone who has permission to use the card or account.
>
> For updates on your claim
> If you'd like copies of the documents we used to make this decision, please call us at 1.877.337.4230, Monday through Friday, from 8 a.m. to 8 p.m. Eastern. Please have your claim number when you call.
>
> Thank you for your patience during our review.

18. After receiving the June 3, 2022, letter, Plaintiff called BOA and stated that their determination was wrong. He again stated that he did not make or authorize anyone to make those charges/purchases using his debit card. Plaintiff asked how the charges/purchases were authorized, he asked if there was a signature or if a PIN was used. The BOA representative stated that BOA does not need to have a signature or PIN to authorize the purchases made. The BOA representative further stated that she did not know how the charges were authorized. Plaintiff requested the documents they used again, BOA stated that a copy of the documents they used in making their determination would be sent to him. And of course, keeping with their history, BOA never sent Plaintiff anything.

19. Plaintiff notified BOA and disputed the errors within hours of the unauthorized electronic withdraws on April 22,2022. It was so promptly that the charges were still pending. BOA failed to conduct a reasonable investigation into Plaintiff's dispute. BOA failed to recredit the amount of the unauthorized withdraw and its interest. BOA failed to provide Plaintiff with written explanation or the documents they relied on.

20. Angela again disputed the errors via phone with BOA on or about May 5, 2022. BOA failed to conduct a reasonable investigation into the dispute. BOA failed to recredit the amount of the unauthorized withdraw and its interest. BOA failed to provide Plaintiff with written explanation or the documents they relied on.

21. Both Plaintiff and Angela disputed the errors with a written dispute on May 5, 2022. BOA failed to conduct a reasonable investigation into the dispute. BOA failed to recredit the amount of the unauthorized withdraw and its interest. BOA failed to provide Plaintiff with written explanation or the documents they relied on.

22. BOA wrongfully placed the burden of proof on Plaintiff, when it is BOA's burden to show the accounts were authorized, which they were not. BOA ignored the facts and even contradicted their how conduct by returning some of the unauthorized withdraws, but not the one at issue in this litigation. Please see *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 U.S. Dist. LEXIS 55025, at *43-44 (W.D. Tex. Mar. 25, 2022)(This understanding of Section 8 is consistent with 15 U.S.C. § 1693g, which imposes the same limits on a consumer's liability for unauthorized transactions. Subsection (b) provides that: In any action which involves a consumer's liability for an unauthorized electronic fund transfer, **the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized, or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability [for untimely notice] have been met )**

23. Plaintiff is entitled to actual damages caused by BOA's actions and conduct.

24. BOA's actions and conduct were intentionally, knowingly, willfully and/or negligent

25. Plaintiff is entitled to treble damages.

26. Plaintiff is entitled to reasonable attorney's fees and costs.

## **CAUSES OF ACTION**

27. Plaintiff incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

28. This suit is based upon the BOA's violations of the Electronic Fund Transfer Act. All causes of action were the producing causes of damages which Plaintiff has suffered.

**COUNT I-BOA's VIOLATIONS OF 15 U.S.C. §1693;**
**ELECTRONIC FUND TRANSFER ACT**

29. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

30. Defendant BOA intentionally, knowingly, willfully and/or negligently violated 15 U.S.C. §1693f: a) when they failed to conduct a reasonable investigation into Plaintiff's multiple disputes; b) when they failed to correct the error and recredit Plaintiff's account with interest; c) or if BOA needed more time to complete investigation, they could have provisionally recredited Plaintiff's account and take up to forty-five days to complete their investigation, which they did not do; d) or to provide Plaintiff with documents that they relied on to make their decision.

31. Because of the facts and allegations as stated within, Plaintiff is entitled to trebled damages.

**15 U.S.C.S. § 1693f(a) reads:**

**(a) Notification to financial institution of error.** If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 906(a), (c), or (d) [15 USCS § 1693d(a), (c), or (d)] or notification pursuant to section 906(b) [15 USCS § 1693d(b)], receives oral or written notice in which the consumer—
    **(1)** sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
    **(2)** indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 906(b) [15 USCS § 1693d(b)], the consumer's account, contains an error and the amount of such error; and
    **(3)** sets forth the reasons for the consumer's belief (where applicable) that an error has occurred;
the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. The financial institution may require written confirmation to be

provided to it within ten business days of an oral notification of error if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c), nor shall the financial institution be liable under subsection (e) if the written confirmation is not received within the ten-day period referred to in the previous sentence.

AND;

**15 U.S.C.S. § 1693f(b) reads:**

**(b) Correction of error; interest.** If the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error, subject to section 909 [15 USCS § 1693g], including the crediting of interest where applicable.

If BOA determined that they needed more time, they could have provisionally recredited Plaintiff's account so that Plaintiff would have full use of the funds during their expended time frame of forty-five days after receipt of notice. However, BOA failed to do so.

**15 U.S.C.S. § 1693f(c)**

**(c) Provisional recredit of consumer's account.** If a financial institution receives notice of an error in the manner and within the time period specified in subsection (a), it may, in lieu of the requirements of subsections (a) and (b), within ten business days after receiving such notice provisionally recredit the consumer's account for the amount alleged to be in error, subject to section 909 [15 USCS § 1693g], including interest where applicable, pending the conclusion of its investigation and its determination of whether an error has occurred. Such investigation shall be concluded not later than forty-five days after receipt of notice of the error. During the pendency of the investigation, the consumer shall have full use of the funds provisionally recredited.

AND;

**15 U.S.C.S. § 1693f(d) reads:**

**(d) Absence of error; finding; explanation.** If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

AND;

**15 U.S.C.S. § 1693f(e)**

**(e) Treble damages.** If in any action under section 915 [15 USCS § 1693m], the court finds that—
**(1)** the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or
**(2)** the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation,
then the consumer shall be entitled to treble damages determined under section 915(a)(1) [15 USCS § 1693m(a)(1)].

32. The conduct of BOA was a direct and proximate cause of Plaintiff's injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, statutory, and compensatory damages, as well as such other relief, permitted by law.

33. At all times pertinent hereto, BOA was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

34. At all times pertinent hereto, the conduct of the BOA as well as that of their agents, servants and/or employees, was malicious, intentional, knowingly, willfully, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## **DEMAND FOR JURY TRIAL**

35. Plaintiff demands trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor against Defendant based on the following requested relief:

a. Actual and compensatory damages pursuant to 15 U.S.C. §1693m

b. Plaintiff is entitled to treble damages 15 U.S.C.S. § 1693f(e)

c. Statutory damages pursuant to 15 U.S.C. §1693m

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1693m

e. Such other and further relief as may be necessary, just, and proper.

Dated: April 20, 2023

    Respectfully Submitted,

    /s/Dennis McCarty
    Dennis McCarty
    ATTORNEY FOR PLAINTIFF
    Mississippi Bar Roll No. 102733
    Supreme Court of the United States Bar No. 302174
    Federal Bar No. 993800
    McCarty & Raburn, A Consumer Law Firm, PLLC
    2931 Ridge Rd, Suite 101 #504
    Rockwall, TX 75032
    Telephone: (214) 296-9240
    dennismccartylaw@gmail.com